FILED
JUL 02 2018
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GEORGE MOORE, | |
| Plaintiff, | Case No. |
| v. | |
| HIGHER HOMECARE LLC d/b/a RIGHTCARE FOUNDATION, | 1:18-cv-04563<br>Judge Charles P. Kocoras<br>Magistrate Judge Maria Valdez |
| Defendant. | |

## COMPLAINT

Plaintiff George Moore states as follows for his complaint against Higher Homecare LLC:

### Nature of the Case

1. This action arises out of the Defendant's repeated violations of, *inter alia*, the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. ("TCPA"), and the Illinois Automatic Telephone Dialers Act, 815 ILCS 305, et seq. ("ATDA").

2. This case involves a telemarketing campaign by Defendant Higher Homecare LLC to market their services through the use of autodialed prerecorded messages in violation of the TCPA and ATDA.

3. Mr. Moore never consented to receive these calls. In fact, Mr. Moore registered his telephone number in 2003 on the National Do Not Call Registry where it still remains.

### PARTIES

4. Plaintiff George Moore is a natural person and resident of Illinois in this District.

5. Defendant Higher Homecare LLC ("Higher Homecare") is an Illinois Limited Liability Corporation that has its principal office in this District with a registered agent of Simon Markus, 8128 Lawndale Ave, Skokie, IL 60076.

6. It was formerly named RightCare Foundation and still does business under that name.

7. On or about January 4, 2018, RightCare Foundation changed its name to Higher Homecare.

## JURISDICTION & VENUE

8. The Court has federal question subject matter jurisdiction over these TCPA claims.

9. The Court has supplemental jurisdiction over these ATDA claims pursuant to 28 U.S.C. § 1367, since they form part of the same case and arise from the same set of facts.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (2) because the Defendant is a resident of this district, and because Plaintiff Moore is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

## TCPA BACKGROUND

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls

12. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior

2

express consent of the called party, unless the call is initiated for emergency purposes." *See* 47 U.S.C. § 227(b)(1)(B).

13. The TCPA provides a private cause of action to persons who receive such calls. *See* 47 U.S.C. § 227(b)(3).

14. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do Not Call Registry

16. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until

3

the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

17. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

18. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. § 227(c)(5).

## ATDA BACKGROUND

19. In 1991, the Illinois General Assembly enacted the ATDA to regulate the use of autodialers, in response to many complaints received by the Attorney General's office. Automatic Telephone Dialers Act (codified at 815 Ill. Comp. Stat. 305/1, et seq.)

20. As amended in 2013, the ATDA provides for treble actual damages, statutory damages of $500 per violation, and costs. 815 ILCS 305/30(c)-(c-5).

The ATDA Prohibits Automated Telemarketing Calls

21. The ATDA prohibits "play[ing] a prerecorded message placed by an autodialer without the consent of the called party." 815 ILCS 305/30(b).

22. Under the ATDA, an "autodialer" or "autodialer system" is defined as "any telephone dialing or accessing device, machine, computer or system capable of storing telephone numbers which is programmed to sequentially or randomly access the stored telephone numbers in order to automatically connect a telephone with a recorded message[.]" 815 ILCS 305/5(a).[1]

---

[1] The term "autodialer" or "autodialer system" does not include "device[s] associated with a burglar alarm system, voice message system or fire alarm system." 815 ILCS 305/5(a).

The ATDA Prohibits Caller ID Spoofing

23. The ATDA prohibits operating an autodialer "in a manner that impedes the function of any caller ID when the telephone solicitor's service or equipment is capable of allowing the display of the solicitor's telephone number." *See* 815 ILCS 305/15(d).

24. Under the ATDA, "caller ID" is defined as "the display to the recipient of the call the caller's telephone number or identity". 815 ILCS 305/5(f).

## FACTUAL ALLEGATIONS

25. On or about July 6, 2003, Plaintiff registered his residential telephone number, (630) 510-XXXX on the National Do Not Call Registry.

26. Plaintiff has never removed his residential telephone number from the Registry.

27. On December 13, 18 and 22, 2017, Plaintiff received telemarketing calls from caller ID numbers (629) 228-0068 and (847) 245-2130.

28. When Plaintiff answered the calls, he heard a prerecorded message promoting RightCare Foundation's goods and services.

29. When Plaintiff pressed the number 1 on his telephone during the message, he became connected with a representative who stated that the call was on behalf of RightCare Foundation located in Illinois.

30. The purpose of these calls was to generate sales for Higher Homecare.

31. When Plaintiff called back at (629) 228-0068 to investigate, he heard a tone indicating that the number is not in service.

32. After the prerecorded telemarketing calls the Plaintiff received, he contacted Higher Homecare who informed him that the calls were made by a vendor of theirs doing business as "Live Leads Guru".

33. Plaintiff has been injured by the acts of the Defendant because his privacy has been violated and he was subjected to annoying and harassing calls that constitute a nuisance. Plaintiff was also temporarily deprived of legitimate use of his phone because the phone line was tied up by the illegal calls.

34. Plaintiff did not provide his prior express written consent for the Defendant to place telemarketing calls to him.

## HIGHER HOMECARE'S LIABILITY FOR THE TELEMARKETING CALLS

35. Higher Homecare is a "person," as defined by 47 U.S.C. § 153(39).

36. The Federal Communication Commission ("FCC") is tasked with promulgating rules and orders related to enforcement of the TCPA. *See* 47 U.S.C. 227(b)(2).

37. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

38. In their January 4, 2008 ruling, the FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

39. On May 9, 2013, the FCC confirmed this principle in a Declaratory Ruling holding that sellers such as Higher Homecare may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside

6

the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

40. More specifically, the May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

41. The May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

42. Higher Homecare is legally responsible for ensuring that the vendor that made the calls complied with the TCPA and ATDA, even if Higher Homecare did not itself make the calls.

43. Higher Homecare knowingly and actively accepted business that originated through the illegal telemarketing calls from the vendor that made the calls.

44. By hiring a vendor to make calls on its behalf, Higher Homecare "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

45. Furthermore, Higher Homecare had day-to-day control over the actions of the vendor that made the calls, including the ability to prohibit it from using prerecorded messages to contact potential customers of Higher Homecare and calling phone numbers registered on the National Do Not Call Registry.

46. Additionally, Higher Homecare exercised control by restricting the geographic locations in which the vendor that made the calls could promote RightCare Foundation.

47. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

## COUNT I
## VIOLATION OF THE TCPA'S AUTOMATED TELEMARKETING CALL PROVISIONS

48. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

49. The Defendant violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's residential line using a prerecorded message, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b); 47 C.F.R. § 64.1200(a)(3).

50. The Defendant's violations were willful and/or knowing.

## COUNT II
## VIOLATION OF THE TCPA'S DO NOT CALL PROVISIONS

51. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

52. The Defendant violated the TCPA by (a) initiating telephone solicitations to the Plaintiff's telephone number that is listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

53. The Defendant's violations were willful and/or knowing.

## COUNT III
## VIOLATION OF THE ATDA'S AUTOMATED TELEMARKETING CALL PROVISIONS

54. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

55. The Defendant violated the ATDA by (a) playing prerecorded messages placed by an autodialer to the Plaintiff's residential line, or (b) by the fact that others made those calls on its behalf. *See* 815 ILCS 305/30(b).

## COUNT IV
## VIOLATION OF THE ATDA'S CALLER ID SPOOFING PROVISIONS

56. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

57. On information and belief, the caller ID (629) 228-0068 transmitted to the Plaintiff's telephone during the calls initiated by the Defendant does not represent any phone number presently or previously assigned to Higher Homecare or RightCare Foundation.

58. While, on information and belief, the service or equipment used by the Defendant or their vendor was capable of allowing the display of RightCare Foundation's caller ID on the Plaintiff's telephone, the Defendant or their vendor prevented the correct caller ID from being displayed.

59. The Defendant violated the ATDA by (a) operating an autodialer in a manner that impeded the function of caller ID on the Plaintiff's telephone, or (b) by the fact that others made those calls on its behalf. *See* 815 ILCS 305/15(d).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that judgment be awarded in the Plaintiff's favor and against the Defendant as follows:

A. Because of the Defendant's willful and/or knowing violations of 47 U.S.C. § 227(b)(1), treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

B. Because of Defendant's statutory violations of 47 U.S.C. § 227(b), $500 in statutory damages for every call that violated the TCPA;

C. Because of Defendant's willful and/or knowing violations of 47 U.S.C. § 227(c), treble damages, as provided by statute, of up to $1,500 for every call that violated the TCPA;

D. Because of Defendant's statutory violations of 47 U.S.C. § 227(c), $500 in statutory damages for every call that violated the TCPA;

E. Because of Defendant's statutory violations of 815 ILCS 305/30(b), $500 in statutory damages for every call that violated the ATDA;

F. Because of Defendant's statutory violations of 815 ILCS 305/15(d), $500 in statutory damages for every call that violated the ATDA;

G. Costs of suit;

H. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

RESPECTFULLY SUBMITTED,

GEORGE MOORE,
Pro Se

DATED: July 2, 2018      By: _____

George Moore
906 Chatham Drive
Carol Stream, IL 60188
Email: gmoore3@att.net
Telephone: (630) 699-3205